UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| MAXIM INTEGRATED PRODUCTS, INC., | ) | CASE NO.: |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT FOR PATENT** |
| | ) | **INFRINGEMENT** |
| TARGET CORPORATION | ) | |
| | ) | DEMAND FOR JURY TRIAL |
| Defendants. | ) | |
| | ) | |
| | ) | |

Maxim Integrated Products, Inc. ("Maxim") hereby alleges for its Complaint for patent infringement against defendant Target Corporation, ("Target") on personal knowledge as to its own actions and on information and belief as to the actions of others, as follows:

## THE PARTIES

1.     Plaintiff Maxim is a Delaware corporation with a place of business at 120 San Gabriel Drive, Sunnyvale, California 94086.

2.     On information and belief, defendant Target is a corporation existing and organized under the laws of Minnesota and has its principal place of business located at 1000 Nicollet Mall, Minneapolis, Minnesota 55403.  Target is doing business in the Eastern District of Texas, and can be served through its registered agent for service: CT Corporation System, 350 N. St. Paul St., Ste. 2900, Dallas, Texas 75201.

## JURISDICTION AND VENUE

3.     This action for patent infringement arises under the patent laws of the United States, Title 35 of the United States Code.

4.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5.     This Court has general and specific personal jurisdiction over Target. Target has substantial contacts with the forum as a consequence of conducting substantial business in the State of Texas and within this district.  On information and belief, Target maintains retail stores within Texas and this District; is registered to do business in Texas; has transacted business in Texas and/or in this district, including through the retail stores that it maintains within Texas and this district; offers for sale, sells, and advertises its products and services utilizing the claimed systems and methods with and for customers residing in Texas, including within this district; and provides products and services directly to consumers in Texas, including within this district. Target has committed and continues to commit acts of patent infringement in Texas and this district.

6.     Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c), and 1400(b) because a substantial part of the events giving rise to the claims against Target occurred and are occurring in this district, and/or because Target has regular and established practice of business in this district and has committed acts of infringement in this district.[1]

---

[1]    This matter is related to seventeen other patent actions involving the same four asserted patents (ten of which were originally filed in this Court), which were recently centralized by the Judicial Panel on Multidistrict Litigation and transferred to the United States District Court for the Western District of Pennsylvania for pre-trial proceedings. Because this matter is a tag-along case, Maxim will seek to transfer this case to the Western District of Pennsylvania for pre-trial proceedings, and nothing in this Complaint should be construed otherwise.  *See* MDL No. 2354, Dkt. Nos. 101 (Corrected Transfer Order), 102 (Conditional Transfer Order); J.P.M.L. Rule Nos. 1.1(h), 7.1.

**THE ASSERTED PATENTS**

7.      On August 17, 1999, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 5,940,510 ("the '510 patent"), entitled "Transfer of Valuable Information Between a Secure Module and Another Module," to Stephen M. Curry, Donald W. Loomis, and Michael L. Bolan.  A copy of the '510 Patent is attached to the Complaint as Exhibit A.

8.      The '510 patent is directed to a system for communicating data securely, such as for secure mobile financial transactions, including a coprocessor for processing encryption calculations and a real time clock circuit for time stamping data transactions.

9.      On September 7, 1999, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 5,949,880 ("the '880 patent"), entitled "Transfer of Valuable Information Between a Secure Module and Another Module," to Stephen M. Curry, Donald W. Loomis, and Michael L. Bolan.  A copy of the '880 Patent is attached to the Complaint as Exhibit B.

10.     The '880 patent is directed to a method for electronically transferring units of exchange between two modules, such as for electronically transferring monetary equivalents or encrypted data, or where the method involves decrypting and/or encrypting the data.

11.     On August 15, 2000, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 6,105,013 ("the '013 patent"), entitled "Method, Apparatus, System, and Firmware for Secure Transactions," to Stephen M. Curry, Donald W. Loomis, and Christopher W. Fox.  A copy of the '013 Patent is attached to the Complaint as Exhibit C.

12.     The '013 patent is directed to a secure transaction integrated circuit including a microcontroller core; a modular exponentiation accelerator circuit or a math coprocessor for performing or handling encryption and decryption calculations; an input/output circuit for exchanging data information with an electronic device; and real-time clock or a clock circuit for providing a time measurement.

13.     On May 22, 2001, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 6,237,095 ("the '095 patent"), entitled "Apparatus for Transfer of Secure Information Between a Data Carrying Module and an Electronic Device," to Stephen M. Curry, Donald W. Loomis, and Christopher W. Fox.  A copy of the '095 Patent is attached to the Complaint as Exhibit D.

14.     The '095 patent is directed to an apparatus for receiving and transmitting encrypted data, such as for secure transfers of financial information.

15.     Maxim is the owner by assignment of all rights, title, and interest to and in the '510, '880, '013, and '095 patents (collectively, the "Asserted Patents").

16.     On information and belief, by no later than on or about September 16, 2011, Target had actual notice of each of the Asserted Patents and actual notice that its actions constituted and continue to constitute infringement of at least one claim of each of the Asserted Patents.

## COUNT I:  Infringement of the '510 Patent

17.     Maxim incorporates and realleges paragraphs 1 – 16 above as if fully set forth herein.

18.     On information and belief, Target has and continues to infringe one or more claims of the '510 Patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, selling, and/or offering to sell in the United

States and without authority products, devices, systems, and/or components of systems that embody the patented invention, including for example products, devices, systems and/or components of systems that include or make use of the Target smartphone applications.

19.     On information and belief, Target has induced and continues to induce infringement of the '510 patent pursuant to 35 U.S.C. § 271(b) by encouraging its customers and other third parties to make and/or use the claimed system for communicating data securely, including a coprocessor for processing encryption calculations and a real time clock circuit for time stamping data transactions.  Such making and/or using of the claimed system for communicating data securely constitutes infringement, literally or under the doctrine of equivalents, of one or more claims of the '510 patent by such customers or third parties.  Target's acts of encouragement include: providing and intending its customers to use the Target smartphone applications; providing other components of the system that makes use of these applications, including, *e.g.*, servers and data storage; advertising these applications through its own and third-party websites; and providing instructions to use these applications.

20.     Target has proceeded in this manner despite its actual knowledge of the '510 patent and that the specific actions it actively induced on the part of its customers and other third parties constitute infringement of the '510 patent.  At the very least, because Target has been and remains on notice of the '510 patent and the accused infringement, it has been and remains willfully blind regarding the infringement it has induced and continues to induce.

21.    On information and belief, Target has contributed and continues to contribute to the infringement of the '510 patent pursuant to 35 U.S.C. § 271(c) by, without authority, selling and/or offering to sell within the United States, importing, and/or supplying components of the claimed system for communicating data securely, such as the Target smartphone applications.  When, for example, these applications are installed on a portable device, the claimed systems are made and/or used, thereby infringing, literally or under the doctrine of equivalents, of one or more claims of the '510 patent.  These components supplied by Target, including, *e.g.*, these applications, constitute material parts of the claimed inventions of the '510 patent.

22.    On information and belief, Target knows, for the reasons described in detail above, that these components are especially made and/or especially adapted for use in infringing the '510 patent.  Moreover, these components are not staple articles of commerce suitable for substantial noninfringing use at least because the components have no use apart from infringing the Asserted Patents, including the '510 patent.  For example, at least the Target smartphone applications are used only in conjunction with or as part of the claimed systems for securely communicating data.

23.    On information and belief, Target has willfully infringed and continues to willfully infringe the '510 Patent by making, using, offering to sell, and/or selling the applications and other components of the claimed system in the United States without authority, by actively inducing infringement of the '510 patent, and by contributing to the infringement of the '510 patent despite an objectively high likelihood that such actions constitute infringement and despite being on notice that its actions constitute infringement.

24.    Maxim has suffered damages as a result of Target's infringement of the '510 Patent.  In addition, Maxim will continue to suffer severe and irreparable harm unless this Court issues a permanent injunction prohibiting Target, its agents, servants, employees, representatives, and all others acting in active concert therewith from infringing the '510 Patent.

### COUNT II:  Infringement of the '880 Patent

25.    Maxim incorporates and realleges paragraphs 1 – 16 above as if fully set forth herein.

26.    On information and belief, Target has and continues to infringe one or more claims of the '880 Patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by performing in the United States and without authority every step of the patented invention by using products, devices, systems and/or components of systems that include or make use of the Target smartphone applications.

27.    On information and belief, Target has induced and continues to induce infringement of the '880 patent pursuant to 35 U.S.C. § 271(b) by encouraging its customers and other third parties to perform the claimed methods for electronically transferring units of exchange.   Such performing of the claimed method for electronically transferring units of exchange constitutes infringement, literally or under the doctrine of equivalents, of one or more claims of the '880 patent by such customers or third parties.  Target's acts of encouragement include: providing and intending its customers to use the Target smartphone applications; providing other components of the system that makes use of these applications, including, *e.g.*, servers and data storage; advertising these applications through its own and third-party websites; and providing instructions to use these applications.

28.     Target has proceeded in this manner despite its actual knowledge of the '880 patent and that the specific actions it actively induced on the part of its customers and other third parties constitute infringement of the '880 patent.  At the very least, because Target has been and remains on notice of the '880 patent and the accused infringement, it has been and remains willfully blind regarding the infringement it has induced and continues to induce.

29.     On information and belief, Target has contributed and continues to contribute to the infringement of the '880 patent pursuant to 35 U.S.C. § 271(c) by, without authority, selling and/or offering to sell within the United States, importing, and/or supplying components of a system for electronically transferring units of exchange, such system including the Target smartphone applications, wherein use of the system constitutes performance of the claimed methods.  When, for example, these applications are used on a portable device, the claimed methods are performed, thereby infringing, literally or under the doctrine of equivalents, of one or more claims of the '880 patent.  These components supplied by Target, including, *e.g.*, these applications, constitute material parts of a system, the only use of which constitutes performance of the claimed inventions of the '880 patent.

30.     On information and belief, Target knows, for the reasons described in detail above, that these components are especially made and/or especially adapted for use in infringing the '880 patent.  Moreover, these components are not staple articles of commerce suitable for substantial noninfringing use at least because the components have no use apart from infringing the Asserted Patents, including the '880 patent.  For

example, at least using the Target smartphone applications are used only in performing the claimed methods for electronically transferring units of exchange.

31.     On information and belief, Target has willfully infringed and continues to willfully infringe the '880 patent by performing in the United States and without authority every step of the claimed invention, by actively inducing infringement of the '880 patent, and by contributing to the infringement of the '880 patent despite an objectively high likelihood that such actions constitute infringement and despite being on notice that its actions constitute infringement.

32.     Maxim has suffered damages as a result of Target infringement of the '880 patent.  In addition, Maxim will continue to suffer severe and irreparable harm unless this Court issues a permanent injunction prohibiting Target, its agents, servants, employees, representatives, and all others acting in active concert therewith from infringing the '880 patent.

## COUNT III:  Infringement of the '013 Patent

33.     Maxim incorporates and realleges paragraphs 1 – 16 above as if fully set forth herein.

34.     On information and belief, Target has and continues to infringe one or more claims of the '013 Patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, selling, and/or offering to sell in the United States and without authority products, devices, systems, and/or components of systems that embody the patented invention, including for example products, devices, systems and/or components of systems that include or make use of the Target smartphone applications.

35.     On information and belief, Target has induced and continues to induce infringement of the '013 patent pursuant to 35 U.S.C. § 271(b) by encouraging its customers and other third parties to make and/or use the claimed secure transaction integrated circuit.  Such making and/or using of the claimed apparatus constitutes infringement, literally or under the doctrine of equivalents, of one or more claims of the '013 patent by such customers or third parties.  Target's acts of encouragement include: providing and intending its customers to use the Target smartphone applications; providing other components of the system that makes use of these applications, including, *e.g.*, servers and data storage; advertising these applications through its own and third-party websites; and providing instructions to use these applications.

36.     Target has proceeded in this manner despite its actual knowledge of the '013 patent and that the specific actions it actively induced on the part of its customers and other third parties constitute infringement of the '013 patent.  At the very least, because Target has been and remains on notice of the '013 patent and the accused infringement, it has been and remains willfully blind regarding the infringement it has induced and continues to induce.

37.     On information and belief, Target has contributed and continues to contribute to the infringement of the '013 patent pursuant to 35 U.S.C. § 271(c) by, without authority, selling and/or offering to sell within the United States, importing, and/or supplying components of a system, including the Target smartphone applications, which system as a result includes the claimed secure transaction integrated circuit.  When, for example, these applications are installed on a portable device, the resulting systems are made and/or used, thereby infringing, literally or under the

doctrine of equivalents, of one or more claims of the '013 patent.  These components supplied by Target, including, *e.g.*, these applications, constitute material parts of the claimed inventions of the '013 patent.

38.     On information and belief, Target knows, for the reasons described in detail above, that these components are especially made and/or especially adapted for use in infringing the '013 patent.  Moreover, these components are not staple articles of commerce suitable for substantial noninfringing use at least because the components have no use apart from infringing the Asserted Patents, including the '013 patent.  For example, at least the Target smartphone applications are used only in conjunction with or as part of the claimed secure transaction integrated circuit.

39.     On information and belief, Target has willfully infringed and continues to willfully infringe the '013 Patent by making, using, offering to sell, and/or selling the applications and other components of the secure transaction integrated circuit in the United States without authority, by actively inducing infringement of the '013 patent, and by contributing to the infringement of the '013 patent despite an objectively high likelihood that such actions constitute infringement and despite being on notice that its actions constitute infringement.

40.     Maxim has suffered damages as a result of Target's infringement of the '013 Patent.  In addition, Maxim will continue to suffer severe and irreparable harm unless this Court issues a permanent injunction prohibiting Target, its agents, servants, employees, representatives, and all others acting in active concert therewith from infringing the '013 Patent.

## COUNT IV:  Infringement of the '095 Patent

41.     Maxim incorporates and realleges paragraphs 1 – 16 above as if fully set forth herein.

42.     On information and belief, Target has and continues to infringe one or more claims of the '095 Patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, selling, and/or offering to sell in the United States and without authority products, devices, systems, and/or components of systems that embody the patented invention, including for example products, devices, systems and/or components of systems that include or make use of the Target smartphone applications.

43.     On information and belief, Target induced and continues to induce infringement of the '013 patent pursuant to 35 U.S.C. § 271(b) by encouraging its customers and other third parties to make and/or use the claimed apparatus for receiving and transmitting encrypted data.  Such making and/or using of the claimed apparatus constitutes infringement, literally or under the doctrine of equivalents, of one or more claims of the '095 patent by such customers or third parties.   Target's acts of encouragement include:  providing and intending its customers to use the Target smartphone applications; providing other components of the system that makes use of these applications, including, *e.g.*, servers and data storage; advertising these applications through its own and third-party websites; and providing instructions to use these applications.

44.     Target has proceeded in this manner despite its actual knowledge of the '095 patent and that the specific actions it actively induced on the part of its customers and other third parties constitute infringement of the '095 patent.   At the very least,

because Target has been and remains on notice of the '095 patent and the accused infringement, it has been and remains willfully blind regarding the infringement it has induced and continues to induce.

45.    On information and belief, Target has contributed and continues to contribute to the infringement of the '095 patent pursuant to 35 U.S.C. § 271(c) by, without authority, selling and/or offering to sell within the United States, importing, and/or supplying components of a system, including the Target smartphone applications, which system as a result embodies the claimed apparatus.  When, for example, these applications are installed on a portable device, the resulting systems are made and/or used, thereby infringing, literally or under the doctrine of equivalents, of one or more claims of the '095 patent.  These components supplied by Target, including, *e.g.*, these applications, constitute material parts of the claimed inventions of the '095 patent.

46.    On information and belief, Target knows, for the reasons described in detail above, that these components are especially made and/or especially adapted for use in infringing the '095 patent.  Moreover, these components are not staple articles of commerce suitable for substantial noninfringing use at least because the components have no use apart from infringing the Asserted Patents, including the '095 patent.  For example, at least the Target smartphone applications are used only in conjunction with or as part of the claimed apparatus.

47.    On information and belief, Target has willfully infringed and continues to willfully infringe the '095 Patent by making, using, offering to sell, and/or selling the applications and other components of the claimed apparatus in the United States without

authority, by actively inducing infringement of the '095 patent, and by contributing to the infringement of the '095 patent despite an objectively high likelihood that such actions constitute infringement and despite being on notice that its actions constitute infringement.

48.     Maxim has suffered damages as a result of Target's infringement of the '095 Patent.  In addition, Maxim will continue to suffer severe and irreparable harm unless this Court issues a permanent injunction prohibiting Target, its agents, servants, employees, representatives, and all others acting in active concert therewith from infringing the '095 Patent.

## PRAYER FOR RELIEF

For the above reasons, Maxim respectfully requests that this Court grant the following relief in favor of Maxim and against Target:

(a)     A judgment in favor of Maxim that Target has infringed (either literally or under the doctrine of equivalents) one or more claims of the Asserted Patents;

(b)      A permanent injunction enjoining Target and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert or participation with Target, from infringing the Asserted Patents;

(c)     A judgment and order requiring Target to pay Maxim its damages, costs, expenses, and pre-judgment and post-judgment interest for Target's infringement of the Asserted Patents;

(d)     An award of treble damages for Target's willful infringement of the

Asserted Patents;

(e)     A judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding Maxim its reasonable attorney fees; and

(f)     Any and all such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff Maxim demands a trial by jury of this action.


Dated: October 1, 2012

By: */s/Andrew W. Spangler*
Andrew W. Spangler
State Bar No. 24041960
Spangler & Fussell P.C.
208 N. Green Street, Suite 300
Longview, Texas 75601
903-753-9300
Fax: 903-553-0403
Email: spangler@sfipfirm.com

Co-Counsel:
Matthew. D. Powers
CA Bar No. 104795 (Admitted E.D. Tex.)
Steven S. Cherensky
CA Bar No. 168275 (Admitted E.D. Tex.)
555 Twin Dolphin Drive, Suite 360
Redwood Shores, CA 94065
Telephone:  (650) 802-6000
Fax:  (650) 802-6001
Email:
matthew.powers@tensegritylawgroup.com
steven.cherensky@tensegritylawgroup.com

James C. Otteson
CA Bar No. 157781 (Admitted E.D. Tex.)
Philip W. Marsh
CA Bar No. 276383 (Admitted E.D. Tex.)
Michael D.K. Nguyen
CA Bar No. 264813 (Admitted E.D. Tex.)
AGILITY IP LAW, LLP
149 Commonwealth Drive
Menlo Park, CA 94025
Telephone:  650-227-4800
Fax:  650-318-3483
Email: jim@agilityiplaw.com
      phil@agilityiplaw.com
      mnguyen@agilityiplaw.com

<u>Of Counsel</u>:
Michael North
NORTH WEBER & BAUGH LLP
2479 E. Bayshore Road, Suite 707
Palo Alto, CA 94303

*Attorneys for Plaintiff,*
*Maxim Integrated Products, Inc.*